```
                UNITED STATES DISTRICT COURT
                 DISTRICT OF MASSACHUSETTS



LIBERTY MUTUAL INSURANCE CO., )
                              )
     Plaintiff,               )
                              )
     v.                       )
                              )
THE BLACK & DECKER CORP.,     )   CIVIL ACTION
BLACK & DECKER, INC.,         )   NO. 04-10655 (Boarhead)
BLACK & DECKER, U.S. INC.,    )   NO. 04-10968 (Uniontown)
EMHART CORP., and EMHART      )
INDUSTRIES, INC.,             )
                              )
     Defendants.              )
```

<u>MEMORANDUM AND ORDER
REGARDING SUMMARY JUDGMENT FOR
BOARHEAD SUPERFUND SITE AND UNIONTOWN LANDFILL</u>
January 13, 2005

The question presented by these cross motions for summary judgment is whether Liberty Mutual is obligated to compensate Black & Decker, under Liberty Mutual insurance policies issued to Black & Decker and its corporate predecessors, for pre-notice defense costs incurred in defending against claims relating to the Boarhead Superfund Site ("Boarhead") and the Uniontown Landfill ("Uniontown").

**I. Background**

The Boarhead Farm Agreement Group brought claims relating to contamination at the superfund site in the Eastern District of Pennsylvania on August 26, 2002, naming Emhart Industries, Inc.

-1-

("EII") as a defendant. Black & Decker notified Liberty Mutual of the complaint by a letter dated October 16, 2002, in which it demanded defense and indemnification. Liberty Mutual agreed to defend Black & Decker, but only for those costs incurred after October 16, 2002. Liberty Mutual reimbursed Black & Decker for those costs and indemnified Black & Decker for the amount incurred settling the claim. The dispute here turns on the defense costs incurred prior to October 16, 2002.

A similar issue arises as to the Uniontown site. The owner of the landfill, Rumpke of Indiana, Inc., brought claims in October 2004 relating to contamination at Uniontown. In December 1995, four of the defendants filed a third-party complaint against a number of additional parties, including USM Corporation. The third party plaintiffs did not attempt to serve the complaint on USM until April 1997.[1] In September 1997, the third party plaintiffs named Emhart Corporation as a defendant in place of USM in an amended complaint, and Emhart was served in

---

[1] Black & Decker contends: "The Third Party Plaintiffs did not attempt to serve that complaint on USM Corporation, which by this time no longer existed as a separate entity, until April 1997." Liberty Mutual responds, in pertinent part, that "[t]o the extent that this statement contains facts to which a response is deemed necessary, [it] has no objection to this factual statement, but states that there exists no indication that the third-party plaintiffs did not attempt to serve the complaint because they had any knowledge as to the existence or non-existence of the USM entity." As will become apparent in this Memorandum, there is no need for me to resolve this latent factual dispute in order to dispose of the remaining issues in this case.

October of that year.  The court stayed the litigation on March 31, 1998 pending a determination by the Indiana Department of Environmental Management as to the appropriate measures to be taken at the site.  The stay was lifted on August 18, 2003.

On October 16, 2002, Black & Decker notified Liberty Mutual of the claim, demanding defense and indemnification.  Liberty Mutual requested additional information in a February 5, 2003 letter, to which Black & Decker responded on July 21, 2003.  By letter dated March 18, 2004, Liberty Mutual agreed to pay for Black & Decker's defense costs incurred after October 16, 2002.  Liberty Mutual paid these costs in addition to an indemnity payment covering the amount Black & Decker paid to settle the Uniontown claim.  As in the Boarhead claim, the parties dispute responsibility for costs incurred before October 16, 2002.

These sites implicate USM policies and are, consistent with my May 17, 2002 Memorandum and Order, governed by Massachusetts law.

**II. Discussion**

**A. Standard of Review**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(c). A party seeking summary judgment must make a preliminary showing that no genuine issue of material fact exists. Nat'l Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995), cert. denied, 515 U.S. 1103 (1995). Once the movant has made such a showing, the nonmovant must point to specific facts demonstrating that there is, indeed, a trialworthy issue. Id.

A fact is "material" if it has the "potential to affect the outcome of the suit under the applicable law." Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000), and a "genuine" issue is one supported by such evidence that "a 'reasonable jury, drawing favorable inferences,' could resolve it in favor of the nonmoving party." Triangle Trading Co., Inc. v. Robroy Indus., Inc., 200 F.3d 1, 2 (1st Cir. 1999) (quoting Smith v. F.W. Morse & Co., 76 F.3d 413, 428 (1st Cir. 1996)). "[C]onclusory allegations, improbable inferences, and unsupported speculation," are insufficient to establish a genuine dispute of fact. Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).

Cross-motions for summary judgment do not alter the basic summary judgment standard, but rather require courts to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed. See Adria Int'l Group, Inc. v. Ferre Dev., Inc., 241 F.3d 103 (1st Cir. 2001); Wightman v. Springfield Terminal Ry. Co., 100 F.3d 228, 230 (1st Cir. 1996). Thus, in deciding cross-motions for summary judgment, courts must

consider each motion separately, drawing inferences against each movant in turn.  Reich v. John Alden Life Ins. Co., 126 F.3d 1, 6 (1st Cir. 1997).

**B. Recovery of Pre-notice Defense Costs**

Liberty Mutual contends that "payments made prior to providing notice of a claim do not constitute defense costs, because the duty to defend does not exist until notice of the claim is given to the insurer."  I addressed the recovery of pre-notice defense costs under Massachusetts law in an August 25, 2004 Memorandum and Order deciding a series of post-trial motions, see Liberty Mut. Ins. Co. v. Black & Decker Corp., 2004 U.S. Dist. LEXIS 17444, at *10-18 (D. Mass. Aug. 25, 2004).[2]  I

---

[2]In sum, I
> conclude[d] that the question of when the duty arises is distinct from when the duty is breached, and in a state like Massachusetts -- which, like Maryland, requires prejudice for the late notice defense -- notice is deemed an independent obligation of the insured, not a condition precedent to coverage.  The widely-followed late notice doctrine under which post-notice costs are recoverable absent prejudice, but pre-notice costs are per se excluded, is in tension with the underpinnings of Massachusetts's analysis of the notice clause.  I hesitate to disagree with Judge Keeton, particularly on questions of insurance law, but reflection persuades me that Hoppy's Oil[Service, Inc. v. Ins. Co. of N. America, 783 F. Supp. 1505, 1509 (D. Mass. 1992)] does not represent the best rule -- or, more pertinently, the law of Massachusetts -- on this point.  I predict that the Supreme Judicial Court, if confronted with these arguments, would find that pre-notice defense costs are recoverable absent prejudice.

See id. *17-18 (citation and footnote omitted).

I recognize that Maryland law, as discussed in Sherwood Brands, Inc. v. Hartford Accident & Indemnity Co., 347 Md. 32 (1997), which I believe that Massachusetts would endorse as the

there rejected the rule of law relied upon by Liberty Mutual here.  I restate the prediction -- for the reasons more fully described in my previous ruling -- that the Supreme Judicial Court, if confronted with these arguments, would find that pre-notice defense costs are recoverable absent prejudice.[3]

Moreover, Liberty Mutual's contention that such an approach provides an insured with no incentive to notify its insurer promptly of a claim is not persuasive.  Certainly, a bright-line rule would provide an additional incentive, but it is not accurate that no incentives exist under the approach I adopt here.  Delay in notification subjects an insured to additional

---

appropriate approach, involves a statutory enactment.  I do not believe that the Massachusetts Supreme Judicial Court in this connection would attach significance to whether the Sherwood approach was developed in connection with statutory interpretation or common law.

[3]Liberty Mutual also bases its argument on the policy provisions themselves, which do not permit the insured to make voluntary payments without Liberty Mutual's consent.  As I have stated previously in this ongoing litigation,

> [g]enerally, the insurer "must prove material prejudice resulting from its policyholder's violation of a consent-to-settlement provision in order to rely on that violation as an affirmative defense to a claim."  The policy behind this rule is that the purpose of a consent-to-settlement provision is essentially the same as that of a notice-of-claim provision: to give the insurer an opportunity to protect its interests. Since an insurer must prove material prejudice in order to rely on late notice as a defense, the Supreme Judicial Court has concluded that the same requirement should apply to voluntary payments.

Liberty Mut. Ins. Co. v. Black & Decker Corp., 2003 U.S. Dist. LEXIS 25397, at *104-05 (D. Mass. Dec. 5, 2003).

litigation costs to establish its right to pre-notice defense costs, uncertainty over judicial determinations regarding those fees, and an increased threat that its insurer will be able to establish prejudice.  Where, like here, there is no indication that the insured's delay was due to some ulterior motive or was of such unreasonable length that prejudice potentially could be presumed,[4] insurers should be required at a minimum to establish a measure of prejudice.  Liberty Mutual, having accepted its duty upon receiving notice, is no doubt in a more sympathetic posture than it otherwise would have been had it declined to defend.  Consequently, its burden of establishing prejudice need not be high.  But, here, Liberty Mutual makes no attempt to meet any burden.

As I previously found in related litigation, the insurer always bears the burden of proving that it was actually prejudiced by the delay.  This is true even where the delay was "extreme."[5]  <u>Darcy v. Hartford Ins. Co.</u>, 407 Mass. 481, 484-85, 486-87 (1990); <u>Employers' Liability Assur. Corp., Ltd. v. Hoechst Celanese Corp.</u>, 43 Mass. App. Ct. 465, 478 (1997).  Liberty

---

[4]Although Black & Decker did not notify Liberty Mutual of the Uniontown claim for over five years, the underlying action was stayed for the majority of that time period and relatively modest defense costs were incurred.

[5]The remainder of the relevant discussion from my December 5, 2003 Memorandum and Order can be found at <u>Liberty Mut. Ins. Co. v. Black & Decker Corp.</u>, 2003 U.S. Dist. LEXIS 25397, at *85-87 (D. Mass. Dec. 5, 2003).

Mutual does not argue in its own memorandum requesting summary judgment with respect to Boarhead or Uniontown that it was prejudiced in some specific fashion.  Rather, in its response to Black & Decker's motion for summary judgment, Liberty Mutual contends that it was prejudiced in some general fashion by the delayed notification.

The length of delay in Boarhead was, at most,[6] 51 days while that in Uniontown more than five years.  Although the latter might, at first blush, appear to be a substantial delay, the litigation at issue was stayed for most of the period.  Moreover, Black & Decker claims to have incurred fewer costs during those five years than during the less than two months it defended the Boarhead case before notification.  As Liberty Mutual notes, while the length of delay is a factor to be considered, it must also establish that it is in a "substantially less favorable position than it would have been in had timely notice been provided."  Darcy, 407 Mass. at 486.

After recounting the length of delay at each site, Liberty Mutual's remaining argument -- to establish that it is in a "substantially less favorable position" -- is that "Black & Decker committed itself to a course of action regarding the Site, had selected counsel and had made expenditures in connection with

---

[6]It is not clear when USM was served with the complaint in the Boarhead case.

each Site prior to providing notice . . . ." (Pl. Opp. Mem., at 8.) This delay, Liberty Mutual contends, "precluded [it] from taking steps to protect its interests." (Id.) Liberty Mutual does not, however, establish what those steps would have been or how in fact it would have proceeded differently if provided the opportunity. Liberty Mutual, in essence, simply declares that the delay was prejudicial, resurrecting its prior contention that delay is per se prejudicial. As I have found previously, see supra note 4, generalized assertions concerning the detrimental impact of delay on trial preparation are insufficient. Darcy, 407 Mass. at 487 n.5.

In addition, although in its response to Black & Decker's statement of undisputed facts Liberty Mutual did contest the reasonableness of the costs incurred,[7] it does not pursue that argument in its memoranda.[8] It is worth noting that Liberty

---

[7] See Pl. Response to Defs. Statement of Material Facts, at 17-18 ("Liberty Mutual contends that the terms 'fair and reasonable' and 'reasonably necessary' contemplate both an expert opinion and a legal conclusion to which Liberty Mutual has no present obligation to admit or deny. To the extent response is deemed necessary, Liberty Mutual denies such costs are fair and reasonable and that all of the work performed was reasonably necessary.").

[8] In my August 25 Memorandum and Order, I found:
The purpose of contract damages is to put the party suffering from the breach in as good a position it would be in had there been no breach. If Black & Decker had timely submitted notice of the Bostik Middleton and Whitman claims to Liberty Mutual, and Liberty Mutual had assumed the defense, Black & Decker's defense costs would have been subject to the limitations of whatever reasonable cost

Mutual reimbursed, apparently without any reasonableness objections, the post-notice defense costs incurred at these sites.  Liberty Mutual provides not a hint about why those costs were deemed reasonable while the costs incurred before October 16, 2002 are now considered unreasonable.  Consequently, a finding for Liberty Mutual would be the functional equivalent of applying the per se rule I reject.

In light of Liberty Mutual's failure to establish prejudice or to provide a basis to find the fees charged unreasonable, I find that Black & Decker is entitled to reimbursement for its pre-notice defense costs in both the Boarhead and Uniontown claims.

---

>       management policies Liberty Mutual employed at the time.  Of course, it is doubtful that Liberty Mutual would have assumed the defense even given timely notice. But to the extent that a certain cost would be recoverable under the discretionary standards of Massachusetts law, yet would not be recoverable under the business criteria that Liberty Mutual would have employed at the time, Liberty Mutual is ipso facto prejudiced by the late notice. Permitting recovery based on more generous Massachusetts law standards would give Black & Decker more than it would have been entitled to had Liberty Mutual properly assumed the defense. Therefore, I hold that pre-notice costs are subject to the objective criteria for reviewing defense cost claims that Liberty Mutual employed at the time that the costs were incurred.

Liberty Mut. Ins. Co. v. Black & Decker Corp., 2004 U.S. Dist. LEXIS 17444, at *25-26 (D. Mass. Aug. 25, 2004).  Liberty Mutual fails to demonstrate, in relation to the Boarhead and Uniontown sites, however, what "reasonable cost management policies [it] employed at the time."

### III. Conclusion

For the reasons stated more fully above, Black & Decker's motion for summary judgment regarding the Boarhead and Uniontown sites is GRANTED.  Liberty Mutual's motions for summary judgment are DENIED.  The parties shall submit on or before January 28, 2005 a form of judgment reducing this determination to specified damages.

/s/ Douglas P. Woodlock

_____
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE